Wynette E. **BENNETT, Administratrix of the Estate of Edwin N. Bennett Deceased, Plaintiff-Appellant,**

v.

**ENSTROM HELICOPTER CORPORATION, a Michigan Corporation, Defendant-Appellee.**

No. 80–1814.

United States Court of Appeals, Sixth Circuit.

Aug. 12, 1982.

John G. Konkel, Charfoos, Christensen, Gilbert, Archer, Adrienne Southgate, Detroit, Mich., for plaintiff-appellant.

Grant J. Gruel, Cholette, Perkins & Buchanan, Edward Wells, Grand Rapids, Mich., for defendant-appellee.

Before EDWARDS, Chief Judge, PECK, Senior Circuit Judge, and CHURCHILL,[*] District Judge.

ORDER

There is before us an appellant's motion for clarification of our opinion of June 3, 1982, an appellant's petition for rehearing with supporting documents, and an appellee's brief in opposition to the petition for rehearing. We have examined these materials and hereby grant Appellant Bennett's timely petition for rehearing. For the following reasons, upon reconsideration, 679 F.2d 630, we again affirm the district court's judgment for defendant-appellee Enstrom.

---

[*] Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

Since this Court's original decision in this diversity case, the Supreme Court of Michigan has substantially changed the relevant law of that state by its decisions in *Sexton v. Ryder Truck Rental, Inc.* and *Storie v. Southfield Leasing, Inc.,* 413 Mich. 406, 320 N.W.2d 843 (1982) (hereinafter, *Sexton*). The determinative issue in this case remains whether a Michigan court would apply Michigan substantive law, the *lex fori*, to Bennett's action. Bennett's petition for rehearing relies on *Sexton* in arguing that Michigan would now apply its own law. We reaffirm our earlier holding that Bennett's cause would be decided by a Michigan court according to New Zealand substantive law, the *lex loci delicti*, which would bar the action, and we note that this holding is not attacked in Bennett's petition for rehearing.

The effect of the *Sexton* decision on the disposition of this case is not easily summarized. *Sexton* produced two "majority" decisions, with one justice joining in two opinions. Justice Williams' opinion established two rules:

(1) "[W]here Michigan residents or corporations doing business in Michigan are involved in accidents in another state and appear as plaintiffs *and* defendants in Michigan courts, the courts will apply the *lex fori*, not the *lex loci delicti* . . ., without reference to any particular state policy." *Sexton*, 320 N.W.2d at 854, Williams, J. (Emphasis added).

(2) Michigan's owners' liability statutes, including the aircraft owner's statute, MCLA § 259.180a, will be given "uniform application to residents traveling outside of Michigan as well as [to] persons within our state." *Id.* at 856. The rationale for this rule is that these statutory causes of action are founded not on any conduct of the parties outside of Michigan "but on the relationship between *Michigan* owners and *Michigan* operators." *Id.* (Emphasis added).

Neither of these holdings avails the plaintiff, who is not a Michigan resident.

Justice Kavanagh's second "majority" opinion held that the place of the wrong is no longer a "fact controlling or even of great significance" to choice-of-law questions, since the state clearly has the "power" to regulate the extraterritorial consequences of the intrastate *status* of ownership. Although Justice Kavanagh's opinion could be read as requiring application of the Michigan owners' liability statutes to all Michigan vehicle and aircraft owners,[1] the more natural and less radical reading of Justice Kavanagh's opinion is that given by Justice Levin, who concurred in Justice Kavanagh's opinion and wrote separately:

Justice Kavanagh's opinion would hold that in a tort action commenced in Michigan, the domestic law of this state shall govern absent a reason for applying the law of another state and that the place of the wrong is not a reason for not applying Michigan domestic law. 320 N.W.2d at 857, Levin, J.

We believe that a Michigan court would find the following reasons for applying the law of New Zealand to this case:

The plaintiff and her decedent were New Zealanders at the time of the alleged torts (D. Ct. mem. op. at 1);

The plaintiff has received compensation for her injury under the laws of New Zealand (*id.* at 2);

The flight on which Mr. Bennett died began and ended in New Zealand (*id.* at 4);

The fatal helicopter had been shipped to New Zealand for sale and use there (*id.*);

There was no helicopter sale and no employment contract between Mr. Bennett and Enstrom of Michigan, although there may have been business contacts between them in Michigan (*id.* at 5);

The fatal helicopter had been lent to Mr. Bennett for his own purposes on the day of his death (*id.*).

1. We assume for present purposes, without so finding, that the defendant, and not its New Zealand subsidiary or proto-subsidiary, was the legal owner of the helicopter involved in this case. See Part II, *infra.*

Bennett had not challenged any of these findings of fact as clearly erroneous. Singly and together, these facts show that the State of Michigan has little interest in applying its own laws to this case.[2]

We find no textual support for Bennett's statement that three of the Justices voting in *Sexton* would hold that the residence of the parties is not germane to the application of Michigan law. Justices Kavanagh, Fitzgerald and Levin would hold that the *place of the wrong* is of no significance, which is quite another thing. Their approach is not unlike that taken in our original decision of this case, in which we noted that the *lex loci* rule was not "reflexively" applied in Michigan.

## II.

Bennett has also filed a motion for clarification of our opinion of June 3, 1982, in which we stated that "[t]he helicopter that Mr. Bennett went down in was exported by, but neither owned nor operated by, the defendant Michigan corporation." 679 F.2d at 632. We assume for purposes of this rehearing the state of affairs most favorable to Bennett, namely that Enstrom of Michigan, and not Enstrom of New Zealand, owned and operated[3] the aircraft at the time of the accident. Accordingly, the motion for clarification is moot and therefore denied.

---

2. In a footnote to his concurring opinion, Justice Levin described similar tests for determining the extraterritorial application of Michigan civil liability statutes:

   I agree that the . . . statutes apply where the loss arises out of an accident involving a vehicle which had a situs in Michigan when permission to use the vehicle was granted in Michigan *and* the journey began in Michigan. Levin, J., at n.1. (Emphasis added.)

3. Michigan law defines operation of an aircraft to include authorizing its use. See M.C.L.A. § 259.22. The operator of the craft in the everyday sense of the word (the sense used in the *Sexton* opinions) was, of course, its pilot, Mr. Bennett.